# Livezey's Appeal.

A testator directed as follows: "The rest and residue of my estate I will and bequeath to my two nephews, Joseph and Thomas, and my two nieces, A. and S., share and share alike. Whatever portion shall come to Joseph and my two nieces shall be held in trust by my executors for their use, and the net income from the same shall be paid to each respectively, and in case of the death of either, the heirs of such decedent shall receive the same on arriving at the age of twenty-one years, that the parent would have taken. In the event of the death of either of my nephews or nieces without leaving lawful issue, a child or children to survive them and attain the age of twenty-one years, then the share of such nephew or niece, I direct my executors to pay from principal of said share," various pecuniary legacies to charities. The Orphans' Court awarded to Thomas one fourth the residuary estate, absolutely, and the remaining three fourths to the trustees under the trusts above limited. Upon appeal by Joseph, who claimed to be entitled to one fourth absolutely:

*Held*, that the trust was an active one, continuing during and after Joseph's life, and the intent of the testator was to give Joseph the income for life only; the decree was therefore affirmed.

April 2, 1884. Before MERCUR, C. J., GORDON, TRUNKEY, GREEN and CLARK, JJ. PAXSON and STERRETT, JJ., absent.

APPEAL from the Orphans' Court of *Philadelphia county:* Of January Term, 1884, No. 122.

This was an appeal by Joseph R. Livezey from a decree of said court, dismissing his exceptions to the adjudication of the auditing judge, in the matter of the account of Israel H. Johnson et al., trustees under the will of John Livezey, deceased, and distributing the residuary estate of said testator.

The facts were as follows:—John Livezey died January 13, 1878, having made his will, dated December 1, 1868, and six codicils, dated between 1870 and 1877. By his will he directed his executors to pay to his wife during her life the whole of the net income from his estate, after deducting taxes and repairs of real estate, and the expenses of the trust, and also certain legacies, and gave, devised and bequeathed his residuary estate, after the death of his wife, to his nephews John Livezey, Jr., and Thomas Livezey, and his nieces Anna Louisa Livezey and Sarah Marshall Livezey, to be divided between them share and share alike.

By his third codicil, dated February 23, 1874, he disposed of his residuary estate as follows:—

"*Item.* The rest and residue of my estate I will. and bequeath to my two nephews, Joseph R. Livezey and Thomas Livezey, Jr., and my two nieces, Ann Louisa and Sarah M. Livezey, share and share alike. Whatever portion shall come to Joseph R. Livezey and my two nieces shall be held in trust by my executors for their use, and the net income from the same shall be paid to each respectively, and in case of the death of either, the heirs of such decedent shall receive the same on arriving at the age of twenty-one years that the parent would have taken. In the event of the death of either of my nephews or nieces without leaving lawful issue, a child or children to survive them and attain the age of twenty-one years, then the share of such nephew or niece, I direct my executors to pay from principal of said share, two thousand dollars to the Emlen Institute for the Benefit of Children of African and Indian Descent; five thousand dollars to the Orthopedic Hospital, Seventeenth and Summer streets, Philadelphia; five thousand dollars to the Old Men's Home; three thousand dollars to the Home for Aged Colored Persons, Forty-fourth and Belmont avenue. All the remainder of said shares, if any, I direct my executors and the survivor to distribute amongst such charitable institutions and for the relief of the needy as may in their judgment seem proper. . . . . . I direct the foregoing to be added as a codicil to my last Will and Testament, dated twelfth month, 1st, A. D. 1868. I do hereby annul such parts thereof as conflict with this Codicil, all other parts I do hereby ratify and confirm the same, declaring that with these alterations and the foregoing Codicils only to be and contain my last Will and Testament and Codicils thereto."

The trustees filed an account of the residuary estate December 23, 1881, which was confirmed. The balance for distribution was $40,731.45.

The testator's widow being deceased, John R. Livezey and Thomas Livezey claimed to be entitled each to one fourth of the above balance, absolutely. The auditing judge (ASHMAN, J.,) held that the shares of both said nephews of the testator, and of his two nieces were vested, under said codicil, in the accountants, as trustees for said nephews and nieces for life, and thereafter as limited in said codicil.

Exceptions were filed by John R. Livezey and Thomas Livezey, respectively, to the adjudication, and the court, in an opinion by HANNA, P. J., sustained the exceptions of Thomas Livezey, but dismissed those of John R. Livezey, and a decree was entered awarding one fourth of the balance for

distribution to Thomas Livezey, absolutely, and the remaining three fourths to the accountants " as trustees for the purposes of the trusts as to the nephew and two nieces, declared by the third codicil of testator's will."

John R. Livezey thereupon took this appeal, assigning for error the refusal of the court to award to him, absolutely, one fourth of said balance for distribution, and the decree awarding the same to the accountants, to be held in trust by them.

*John G. Johnson*, for the appellant.—No active trust in favor of appellant is created by the residuary clause—the share is given absolutely by the first sentence. The words " life estate," or an intention to give a life estate, do not appear in connection with the gift : Parker's Appeal, 11 P. F. S., 478 ; Rife *v*. Geyer, 9 P. F. S., 393 ; Dodson *v*. Ball, 10 P. F. S., 492 ; Theobald on Wills, 374. The words " in case of the death of either," are always held to contemplate death during the life-time of the testator, or of the first taker of a precedent life estate : Mickley's Appeal, 11 Nor., 517 ; Fahrney *v*. Holsinger, 15 P. F. S., 388 ; Theobald, 483. In this case the contest shows the intention was a death during the life of the first taker, the wife. The devise over is not *after* the decease of Joseph, but " *in case* of his death." In such event his children, " on arriving at the age of twenty-one years," are not to take the remainder ; but they are to " receive the *same* " (one full share) " that the parent *would* have taken : " Caldwell *v*. Skilton, 1 Har., 152 ; Ware *v*. Watson, 7 De G. M. & G., 248. The phraseology of the codicil, though differing from that of the will in the main devise, shows the desire to provide for the same contingency there clearly provided for, viz., a substitutionary devise over, in case of death during the life-time of the testator or of the first taker.

*Benjamin P. Wilson* (*J. Sergeant Price* with him), for the accountants, appellees, and for The Home for Aged Colored Persons, a legatee.

*Lincoln L. Eyre* (*Duncan L. Buzby* with him), for the Old Man's Home, a legatee.

Mr. Justice GREEN delivered the opinion of the court, October 6, 1884.

We think there is satisfactory evidence on the face of the will and codicil in this case, that the testator did not intend the appellant to have an absolute interest in the residue of his estate. The residuary clause of the will did give to all the

nephews and nieces named therein, an absolute and indefeasi
ble interest in the whole residuary estate. As to the appellant
and his two sisters this was radically changed by the residuary
clause of the third codicil. It must be supposed there was a
testamentary purpose in the change. Had none been intended,
there was no occasion for the codicil, and presumably it would
not have been written. An inspection of the language of the
codicil confirms this view. It is highly persuasive, speaking
merely with reference to the testamentary intent, that the
testator did not design the absolute interest conferred by the
will to continue. The gift was not direct to the legatees in
either instrument. It was through the medium of a trust.
The whole estate was given by the will to the executors as
trustees. It was to be managed and maintained by them as
trustees throughout the life of the wife. Under the will, after
the death of the wife, the residue was to be given directly and
absolutely to the four nephews and nieces. But under the
codicil, while, by the first sentence of the residuary clause, a
similar disposition is made, in the next, a vital change is estab-
lished, thus: "Whatever portion shall come to Joseph R.
Livezey and my two nieces shall be held in trust by my execu-
tors for their use, and the net income from the same shall be
paid to each respectively." By these words a new and special
trust is created which had no existence either under the will
or under the first sentence of this clause of the codicil. It is
limited to three of the four legatees, and establishes a trust
as to the portions of the residue coming to them. This trust
is to continue at least until the death of these three legatees,
because immediately upon the death of either, an absolute
estate in the trust property is given to others, to heirs on
arriving at the age of twenty-one years, or upon failure of
such, then to charities at once and in money. Some of the
latter are named, and if they do not exhaust the fund, others
are to be selected by the executors, until the fund is exhausted.
In addition to the creation of this new and special trust, the
clause of the codicil in question positively directs that the
"net income" of the portion coming to the appellant and his
two sisters "shall be paid to each respectively." Of course,
if the principal of the fund is given to each of these legatees
it will be impossible to execute this part of the trust. It
would also follow that no part of the funds would be held in
trust for, or ever paid to, either class of the ultimate and abso-
lute legatees, to wit, the heirs of the legatees named, or, on
failure of these, the charities mentioned in the codicil. Hence
it would seem that if the appellants' contention is sustained,
both the trusts, of income and principal, must fail, and the
expressed purpose of the testator be disappointed. While it

is true that such consequences are sometimes necessary, the judicial mind shrinks from enforcing them unless under the coercion of unbending rules whose application cannot be resisted. We do not think there is any such necessity in this case.

While it is true that the first sentence of the residuary clause of the third codicil gives an absolute estate to the legatees, and the next sentence does not expressly limit the gift of the income to the life of the legatee, it is also true that a fee may be reduced to a less estate by a subsequent clause, and that an unlimited gift of income will not carry the principal of the fund, if such an intent appear in the will. Thus in Urich *v.* Merkel, 31 P. F. S., 332, which was the case of a clear devise of a fee to the testator's son, we held there was an intent manifested in subsequent clauses to reduce the interest to a life estate, not by a positive provision to that effect, but by such restraints upon alienation and encumbrance, and such directions as to the use of income and profits, as indicated an intention that the estate should be for life only, and not a fee. We sustained the court below in the use of the following language: "Although a fee may be given in a former part of a will, it may be restrained by a subsequent clause so as to convert it into an inferior interest. Indeed a particular estate is more frequently given in this mode than in any other. Where a testator has given a fee he cannot strip it of its nature and properties, that is, make a fee something else than that which the law recognizes as such, but he may restrict the generality of his gift and devise, to a less estate." Sheet's Appeal, 2 P. F. S., 257, and Urich's Appeal, 5 Norris, 386, are to the same effect.

In Bentley *v.* Kauffman, 5 Norr. 99, we held that where it was the manifest intent of a testator to sever the product from its source a bequest of the income of an estate will not carry an absolute estate in the principal. On p. 101 AGNEW, C. J., said " That a bequest of income or profits will carry an absolute estate in the principal or corpus of the estate, in some cases is well settled; but the ground of the conclusion in such instances is that no contrary intent of the testator appears, to sever the product from its source, and the fruits, therefore carry with them that which bears them. In the interpretation of a will however in order to gather the testator's intentions, the words *income* and interest, as contradistinguished from the *corpus* or principal, and the enjoyment for life only have an important bearing : Earp's Appeal, 25 P. F. Smith, 119; Ogden's Appeal, 20 Id. 501. Hence when the intent clearly appears, to carry the corpus or principal

over to others, the words of the will must be permitted to have their proper force."

In the case just cited there was an express direction that the interest should be paid to the legatee during his life, but there was also a provision giving the principal to charity in case of the death of the legatee without issue. Both of these provisions were regarded as indicative of an intent that the legatee should not have the principal, and because of that intent the application of the rule that a gift of the income carries with it the principal was denied. In the case at bar the gift over to others upon the death of the legatee of the income is quite as direct and positive as in Bentley *v.* Kauffman, and for that reason alone the ruling in that case would be controlling in this. But we think also that it was the intent of the testator in the present case, to give the income to the appellant only for life, and that consideration also, is therefore applicable to this case.

Apart from the foregoing views we think the trust is an active one, continuing through and beyond, the life of the appellant, and therefore not executed. During the life of the widow the trust of the whole estate was undoubtedly active. The whole care and management of the estate devolved upon the executors as trustees. They were to collect all the rents, income and profits, to pay all charges, taxes and repairs of real estate, and the net income remaining, they were to pay to the widow during her life. All this is directed by the second section of the third clause of the will. The expression " net income " is twice defined in the will, and in the residuary clause of the third codicil it is referred to without a repetition of the definition, but its import as there used is practically the same as in the will. There is no authority to collect the gross income except that which resides in the trustees. It is necessarily their duty to defray all the proper charges and expenses arising against it, and the resulting sum which is the net income, they must pay to the appellant and his sisters. In case of the death of either of these, leaving children, the corpus or principal of the trust, must be preserved for the heirs of such decedent until they arrive at twenty-one years of age, when it must be paid over to them by the trustees. In the event of the failure of heirs it must be paid to the various charities named, and to such others as the executors may determine. Of course the estate cannot be thus preserved without the active intervention of the trustees. As we have seen that the principal does not pass to the appellant and his sisters during their lives because of an intent to the contrary, it must necessarily remain with the trustees for the benefit of those who succeed to it. In Lightner's Estate, 11 W. N. C., 181,

[Sweigard v. Wilson.]

where the share of a daughter was given to one in trust for her and her heirs absolutely in fee, we refused to surrender the estate to the daughter although there was no limitation of income to her for life, mainly because of general provisions for care and management by the trustee, which made the trust active. In Eachus's Appeal, 10 Norris, 105, the share of George, which was first given to him absolutely, was directed to remain in the hands of the executors, the interest to be paid annually, and there was a provision that in the event of George's death without issue his share should be divided among his brothers and sisters. It was held there was a contingent limitation over upon a definite failure of issue, and the estate must be preserved for the benefit of those in remainder, and the trust was therefore active, and must be continued. It has been frequently held that the collection of rents, issues and profits of real estate, and the interest and income of personal estate, to be paid over to the *cestui que trust* during life, and the preservation of the *corpus* of the estate for those in remainder will constitute the trust an active one, and a mere reference to a few of the authorities is sufficient: Barnett's Appeal, 10 Wr., 393; Girard Life Ins. Co. *v.* Chambers, Id., 492; Earp's Appeal, 25 P. F. S., 119; Williams' Appeal, 2 Norris, 379; Ingersoll's Appeal, 5 Norris, 240.

The views we have indicated render it unnecessary to consider many of the distinctions so ably presented by the learned counsel for the appellant, and incline us to regard the conclusion reached by the learned court below as entirely correct.

Decree affirmed and appeal dismissed at the cost of the appellant.